OPINION
Anthony Williams appeals from his conviction in the Greene County Common Pleas Court of two counts of Corruption of a Minor. In a single assignment of error, Williams contends his counsel provided him constitutionally ineffective counsel.
Williams was indicted for the above mentioned offenses on July 29, 1999. Over the next several months, Williams was represented by several different attorneys and he received several continuances of the trial at his request.
On February 8, 2000, for example, Williams filed a motion to have his counsel, William Shira, removed and for permission to represent himself. Williams indicated in his motion that Mr. Shira was upset that Williams had filed numerous motions with the trial court without Shira's approval. (the record does reflect that Williams did file numerous motions on his own with the court during the pre-trial stage of these proceedings).
The matter finally proceeded to trial on August 28, 2000 before a visiting judge. On the day of trial, Williams' counsel, Kevin Lennen, informed the court that Williams wanted a continuance because he had hired John Rion to represent him and he did not wish to proceed to trial with one of Rion's associates, Kevin Lennen. Lennen informed the court that he and another associate, Steve Pierson, had spoken to Williams on a number of occasions about the case but Williams wanted Rion to represent him at the trial. The following occurred in open court on the morning of trial:
THE COURT: Are you representing yourself?
THE DEFENDANT: I would like to.
THE COURT: Go ahead.
 THE DEFENDANT: I haven't even seen a discovery packet yet, Your Honor, that's why I filed a few motions on my own behalf, you see, because everybody wants to keep the facts from me. I don't even know the evidence against me. I don't know what the discovery pack contains. I don't know what the exculpatory evidence —
 THE COURT: I'm going to interrupt. We are only here right at the moment on your request that Mr. Rion be here.
THE DEFENDANT: Yes, sir.
 THE COURT: When is the last time you talked to Mr. Rion?
 THE DEFENDANT: I have never been able to talk to Mr. Rion. This gentleman showed up at the county jail on Saturday. We had about a five or ten-minute meeting, and I was under the impression he was gathering information for Mr. Rion. I must have misunderstood what he was trying to project to me or tell me. As it stands, you know, whenever someone — I had the feeling that when someone is supposed to be representing me, I think that individual should represent me. I wasn't even aware of these things. I haven't been kept abreast of —
 THE COURT: I don't want to hear that. I'm here on a single issue.
THE DEFENDANT: Okay. Yes, sir.
 THE COURT: You're not denying you hired Mr. Rion's office?
 THE DEFENDANT: It's my under — my assumption we hired Mr. Rion personally, sir.
 THE COURT: Very well. And that's the basis of your continuance, that he's not here?
THE DEFENDANT: Well, yes, sir.
THE COURT: Very well. Sit down.
 MR. HUNTER: Your Honor, Jeff Hunter on behalf of the State of Ohio. The State would point out just a couple of things for Your Honor.
I know the Court is aware of this, but, for the record, and that is this case has been pending for approximately a year. It's gone through several continuances. I think the record would reflect every single continuance was at the request of the Defendant. In fact, this case was set for trial, there was a Jury that was impaneled, ready to be impaneled, the case was ready to begin, and the Defendant at that time moved for a continuance, and the Court generously granted the Defendant that continuance.
The Defendant proceeded to, in the interim period, file numerous motions for a continuance. He has gone through several attorneys, quite frankly, and as the Court indicated, from the time that John Rion's office took, I guess, control of the case from another attorney who I think the Defendant fired, there's always been a practice of having any number of attorneys from that office appear on behalf of the Defendant.
And I think the important point here is that Mr. Lennen indicated to the Judge, indicated to you back in chambers, and to the Court again on the record that he notified the Defendant of this change, that he would be the one representing him today, last week, not Saturday, but last week. Actually at no time either Saturday or last week did the Defendant complain about it.
The Defendant, much like a year ago when there was a trial set and ready to go, waited until the day of trial, until there was a Jury outside waiting to be impaneled and then raises this as a quote-unquote issue.
The State believes that the record will show this is merely an attempt by the Defendant to manipulate the Court, manipulate the system in a continuing fashion as opposed to letting justice take its formal course of action and move the case along in a process, quite frankly, that's been much delayed, as the Court has been very generous with the Defendant, and this Court and a previous Court has been very generous to the Defendant, bending over backwards with the Defendant in giving the Defendant every benefit of the doubt.
Here we are, the second time within a year ready for trial, the Jury is ready to come in, and we get these attempts at delaying, and I think the Court will determine that as malingering.
 MR. LENNEN: Your Honor, I feel compelled to put this on the record. My client just informs me that he would wish to fire me at this point and represent himself in this matter. So he asked me to put that on the record, so I am. So for what that's worth, Your Honor, he's asked that I remove myself from this defense.
 THE DEFENDANT: At this point, Your Honor all I need is for him to help me with the subpoenas and advise me on a few issues of the law. I would like to go ahead and proceed then if Mr. Hunter is so anxious to get this matter under way.
THE COURT: I don't need your editorial comments.
THE DEFENDANT: Thank you, sir. Yes, sir.
 THE COURT: Whether you are fired, that's between you two, but I'm not letting you out.
MR. LENNEN: I understand, Your Honor.
THE COURT: That's my prerogative.
MR. LENNEN: That's correct.
 THE COURT: Motion for continuance is denied. We are ready to proceed. I want to ask the Bailiff to bring in the Jury and we will sit 12 jurors.
Williams contends his due process rights were violated when the trial court failed to permit him to establish on the record that his waiver of counsel was ineffective. Secondly, he contends he was denied the effective assistance of counsel because he had not been provided discovery.
In Faretta v. California (1975), 422 U.S. 806, the United States Supreme Court held that a defendant has a constitutional right to defend himself if his waiver of the right to counsel is knowing and intelligent. In McKaskle v. Wiggins (1984), 465 U.S. 168, the Supreme Court held that a defendant's Sixth Amendment right to conduct his own defense was not violated by the unsolicited actions of standby counsel which were held within reasonable bounds and the defendant was allowed to act for himself as he saw fit. The court also held that the Sixth Amendment rights of the defendant were not violated by the appointment of standby counsel even over the objection of the defendant.
The State argues and we agree that the trial court never told Williams he could not represent himself. The trial court stated to Mr. Lennen in appellant's presence, "whether you are fired, that's between you two, but I'm not letting you (Mr. Lennen) out." (Tr. 12). The State notes quite correctly that when the trial began Lennen acted as counsel for Williams and so the court may have assumed Williams had reconsidered his decision to proceed without Lennen's active participation.
There is no indication that Mr. Lennen did not receive discovery from the prosecution. Lennen stated he discussed the facts of the case with Williams on more than one occasion and that Williams "did not indicate any problems to me." (Tr. 4).
The facts surrounding these offenses were not complicated. Nothing in the trial record suggests counsel was not provided the discovery mandated by Crim.R. 16. The record reveals that Williams' counsel vigorously cross-examined the State's witnesses. The record fails to indicate that Lennen provided ineffective or deficient representation. Strickland v. Washington (1984), 466 U.S. 668,687. The assignment of error is overruled.
The judgment of the trial court is Affirmed.
YOUNG, J., and GLASSER*, J., concur.
* Honorable George M. Glasser, Retired from the Sixth District Court of Appeals, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.