**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 99-21067

(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HARRY WHITMAN, also known as Harry Martin,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
H-96-CR-83-1

_____

March 20, 2001

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

PER CURIAM:[*]

Harry Whitman ("Whitman") appeals his criminal conviction arising from his participation in

two bank robberies. He alleges that the district court violated his Sixth Amendment right to represent

---

[*] Pursuant to Fifth Circuit Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

himself by first denying this right, and then granting it without providing him adequate time to prepare for trial. We affirm.

Over a period of ten days in early 1996, Whitman and his accomplice, Yolanda Vick ("Vick"), robbed two Houston banks at gunpoint. The couple first walked into Cypress National Bank carrying large black bags and two "sawed-off" shotguns. Pointing one of the shotguns, Whitman and Vick ordered a teller to close off the drive-thru area. They then took $78,820 from the teller drawers and the vault before leaving the bank.

Later that evening, federal law enforcement officers located Whitman at his residence, but he fled in a red Toyota car. The officers searched his residence and discovered two "sawed-off" shotguns. Later, they discovered an abandoned red Toyota car in a hospital parking lot. The officers then received information that Whitman had entered a movie theater. Inside, they found a black bag filled with money, but Whitman was nowhere to be found.

Whitman and Vick carried out another bank heist about a week later. This time, they entered Compass Bank carrying black bags and "sawed off" shotguns. After taking $35,807, they locked the bank employees and customers inside a vault. They fled from the bank, again eluding law enforcement officials. Two days later, federal law enforcement officers spotted Whitman and Vick in a car on I-10 north of New Orleans. The couple tried to escape and engaged in a high-speed chase. Vick lost control of the car, and crashed it into an embankment. Officers arrested both of them. They found over $27,000, two loaded "sawed-off" shotguns and a black bag inside the car.

Whitman was charged with nine criminal counts: two counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d); two counts of unlawful use or carrying of a firearm during the commission of a crime in violation of 18 U.S.C. § 924(c)(1); two counts of being a felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e)(1); two counts of possession of an unregistered gun in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871; and one count of conspiracy to commit a bank robbery in violation of 18 U.S.C. §§ 2113 and 371.

The court initially appointed attorney Ellis McCullough to represent Whitman. McCullough gave notice to the court on June 7, 1996 that Whitman would present an insanity defense. A few months later, Whitman moved to dismiss McCullough and requested an appointment of a new counsel. The court granted that requested, and on February 14, 1997, appointed attorney Leonard E. Cox ("Cox") to represent Whitman. Cox filed several motions for Whitman, including another notice of an insanity defense.

Whitman again moved to dismiss his attorney and requested a new counsel. He also filed a motion for "hybrid representation," requesting permission to file pro se motions. Whitman claimed that Cox had deprived him "of his right to decide issues of his own defense." The district court denied this motion on February 11, 1999. The court told Whitman that he could either have Cox represent him, or he could proceed pro se, but he could not have both.

At a pretrial conference, Cox argued several motions for Whitman. He also notified the court that the defense expert, Dr. Gerome Brown, opined that there was insufficient evidence to pursue an insanity defense. The court set July 7, 1999 as the trial date. Whitman filed another motion on May 27, 1999 to represent himself. The motion stated that Cox's refusal to allow Whitman to make "vital" strategic choices left him "no other alternative unless the court reconsiders appointing new counsel or allowing defendant to file pro se motions as requested in defendant[']s previous filing(s)." The court denied this motion on May 28, 1999 in a brief order without explanation. A trial date was reset for August 3.

On July 26, 1999, Whitman filed a motion to waive his right to counsel and to proceed pro se. He said he "had no faith or confidence in Mr. Cox as an advocate" for his rights. In an order issued four days later, the district granted Whitman's motion, but ordered Cox to serve as Whitman's standby counsel. On August 3—the trial date—Whitman filed a motion for continuance, alleging that he needed another 120 days to prepare for trial. Whitman also demanded an investigator to look into the facts of the case. The court denied Whitman's requests, and the trial commenced on August 3rd with Cox assisting Whitman as a standby advisory counsel in his pro se defense. A jury convicted him of all nine criminal counts.

Whitman appeals his conviction claiming that the court violated his Sixth Amendment right to represent himself by initially denying his pro se request and then later granting it several days before trial. He also alleges that the court unfairly denied his motion for a continuance. We review Sixth Amendment right to counsel claims *de novo*. *See* Mann v. Scott, 41 F.3d 968, 974 (5th Cir. 1994).

We hold that the district court did not deny Whitman's Sixth Amendment right to represent himself. A criminal defendant has the constitutional right to waive counsel and conduct his own defense. *See McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984) ("The Counsel Clause itself, which permits the accused 'to have the Assistance of Counsel for his defense,' implies a right in the defendant to conduct his own defense.") However, we realize that "the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant." *Id.* at 177, n.7. Thus, we accordingly require a defendant who chooses to proceed pro se to "'knowingly and intelligently' forego counsel, and the request to proceed pro se must be '*clear and unequivocal*.'" *United States v. Martin*, 790 F.2d 1215, 1219 (5th

Cir. 1986) (emphasis added). Indeed, we indulge in every presumption against the waiver of right to counsel. *See Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1981) (holding that the statement "May I represent myself?" was a spontaneous response and not an unequivocal waiver of right to counsel).

Whitman's May 27th motion was not an unequivocal and clear assertion of his right to self-representation. Although he titled it as a "motion for pro-se representation," the text of the motion was ambiguous. He at first seemingly requests self-representation, but he then qualifies it by saying he may proceed pro se "unless the court reconsiders appointing new counsel or allowing defendant to file pro se motions as requested in defendant[']s previous filing(s)." Adding to the ambiguity is that last reference to his previous filing. His earlier February 11th motion clearly requested a hybrid representation, but it also used language similar to that in the May 27th motion: Whitman requested the court's "permission to file pro-se motions/pleadings." Moreover, the May 27th motion never expressly stated that he wanted to waive his right to counsel.

A court could have reasonably interpreted Whitman's May 27th motion as a similar request for a hybrid representation. "The fact that there is more than one reasonable interpretation. . .is, in a sense, the best evidence that [Whitman] did not clearly and unequivocally assert his right to self-representation." *Id.* at 134. Thus, the court did not violate Whitman's right to self-representation in denying his May 27th motion.

In contrast, Whitman's July 26th motion clearly and unequivocally expressed his desire for self-representation. He clearly stated that he wanted to "waive counsel" and proceed on his own. The district court then accordingly granted the motion, and assigned Cox as his standby counsel. At trial, Whitman then presented his own defense: he made objections to evidence, released proposed

witnesses subpoenaed by Cox, challenged prospective jurors, and questioned witnesses. In short, we reject Whitman's contention that his Sixth Amendment rights were violated.

Whitman additionally argues that the district court abused its discretion in denying his motion for a continuance of trial. *See United States v. Davis*, 61 F.3d 291 (5th Cir. 1995) (holding that an abuse of discretion standard applies in reviewing denials of continuances). If the district court's ruling is neither arbitrary nor unreasonable, we "must uphold that decision to deny the continuance, even when [we] consider the decision to be a harsh one." *United States v. Hughey*, 147 F.3d 423, 431 (5th Cir. 1998). In determining whether to grant a continuance, a district court should consider factors such as: the amount of time available for preparation, the defendant's role in shortening the time needed, the complexity of the case, the availability of discovery from the prosecution, the adequacy of the defense actually provided at trial, and the likelihood of prejudice from the denial. *See Davis*, 61 F.3d at 298.

We find that the district court's denial of a continuance did not constitute an abuse of discretion. Although the court granted his motion to waive counsel only a few days before the trial, Whitman was responsible for the limited amount of time available. He knew the trial date, but he did not make an unequivocal request to proceed pro se until eight days before trial. Furthermore, the facts and issues of the trial were not overly complex. Indeed, as the district court noted, Whitman himself had the best knowledge of what he was doing at the time of the bank robberies. Whitman also did not go to trial wholly unprepared. He could have received the benefit of all the work that Cox had done to prepare for the trial. Cox, for example, had already interviewed all the witnesses. Cox additionally was present in the courtroom to serve as a standby counsel.

AFFIRMED.