JOURNAL ENTRY AND OPINION
This is an appeal based upon the denial of a pro se petition for post conviction relief filed by defendant-appellant, Michael Socha ("defendant"). The substance of the petition is a claim of ineffective assistance at trial in violation of his rights under the Sixth and Fourteenth Amendments for failing to present defense evidence. For the foregoing reasons, we affirm.
On May 10, 1999, the Cuyahoga County Grand Jury indicted the defendant for two counts of aggravated murder in violation of R.C. 2903.01 and one count of aggravated robbery in violation of R.C. 2911.01. Prior to the jury trial, the court granted the State's motion to amend the charges to murder in violation of R.C. 2903.02 and aggravated robbery.
The defendant proceeded to trial pro se with the assistance of his retained counsel. On August 4, 1999, the court granted the defendant a directed verdict on the charge of aggravated robbery and the jury found defendant guilty of murder in violation of R.C. 2903.02. The court proceeded to sentence defendant to imprisonment for a term of fifteen years to life.
This court affirmed the verdict in State v. Socha (May 10, 2001), Cuyahoga App. No. 76913, discretionary appeal not allowed, State v.Socha (2001), 93 Ohio St.3d 1414, 754 N.E.2d 260. The defendant filed his petition for post conviction relief pursuant to R.C. 2953.21 on June 26, 2000 and filed an amended petition for post conviction relief on July 28, 2000. On January 8, 2001, the State filed its response to the petition and thereafter on February 22, 2001 the defendant filed a traverse. The trial court issued its Findings of Fact and Conclusions of Law on June 22, 2001. This appeal follows.
The defendant substantially adopts the facts as set forth in the trial court's Findings of Fact which are as follows:
At trial, Debra Nelson testified that on April 30, 1999, while she was riding her horse in the Rocky River Metroparks she observed the defendant lifting a body with blood covering the head. Ms. Nelson immediately reported this incident to the Metropark Rangers. Sergeant Oergel and Ranger Dickey, both testified that they responded to the scene where they pursued the defendant who was driving a blue truck. The defendant eventually eluded the pursuit. The rangers returned to the scene and discovered the body of the victim, 78-year-old Edward Edwards and the victim's Cadillac. The rangers then traced the defendant through the license plate of his blue truck.
Cleveland police officer Miksch testified that she responded to the defendant's home where she observed the defendant in a disheveled state with blood on his wrists and shirt although he was uninjured. A fire was in progress in the defendant's residence which was then controlled by firefighters. Blood stained evidence was gathered which included a mallet-type hammer, wood chips, watch, Cadillac keys and defendant's blue truck.
The Cuyahoga County Coroner's Office performed an autopsy which revealed that the victim sustained thirteen wounds to the back of his head consistent with blows from the hammer discovered at the defendant's residence. The coroner's office determined that any one of the thirteen blows to the victim's head was sufficient to cause the victim's death. The DNA testing revealed that the blood samples taken from the hammer, wood chips, watch, and truck bed were consistent with the victim's blood.
The defendant, a licensed attorney, former Cleveland councilman and county prosecutor, testified at trial in his own defense. The victim had been married to the defendant's sister, however, after his sister's death, the defendant learned that the victim's divorce from his first marriage may not have been valid. Based on this information, the defendant contested his sister's will and disputed her retirement and medical benefits which named the victim as the beneficiary. This dispute was settled, however, two weeks prior to the victim's death. The defendant was required to return to court for having not fully complied with the settlement terms.
The defendant testified that on the day the victim was killed, the victim came to his home to return some property covered by the settlement. The two consumed several alcoholic drinks and then the defendant testified that both men departed for separate destinations. The defendant testified that when he returned to his home he found the victim inside and the two engaged in a shoving match. The defendant testified that the victim came at him with a broken glass and that he struck the victim with the hammer in self-defense. He then covered the body with a tarp, drove to the Metroparks and dumped the body in the woods.
Initially, we note that the defendant has failed to provide the trial court transcript for review, therefore, in the absence of a complete transcript we presume the regularity of the proceedings. Knapp v.Laboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384; State v.Abdul-Haliym (Mar. 12, 1998), Cuyahoga App. No. 72411, unreported at 18;State v. Wilson (May 14, 1998), Cuyahoga App. No. 72740, unreported;Casalicchio, et al. v. Contippelli (Apr. 4, 1996), Cuyahoga App. No. 68953, unreported; Orbas v. Whiteside (Sep. 26, 1996), Cuyahoga App. No. 69758, unreported.
The defendant's first pro se assignment of error is as follows:
 THE TRIAL COURT ERRED WHEN IT FOUND THAT PETITIONER PROCEEDED PRO SE AT TRIAL AND PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL SHOULD BE EVALUATED ON ITS MERITS.
The record reveals that prior to the commencement of the jury trial the court granted the defendant's Motion to Act as Own Counsel which stated "Defendant voluntarily, knowingly and intelligently elects to represent himself with the assistance of his retained counsel * * *. The motion requested that the court permit him to act as his own counsel with regard to opening and closing statements, voir dire, cross and direct examination. The defendant then proceeded to represent himself pro se at the jury trial with the additional assistance of his retained counsel.
In his petition, the defendant claims that his counsel was ineffective for failing to obtain fingerprint evidence; for failing to obtain blood evidence from the victim; for failing to investigate and interview the arresting police officer, Miksch; and for failing to present medical evidence at trial which would have bolstered his claim of self-defense.
Specifically, the defendant argues that his retained counsel failed to have the victim's keys and ignition tested for blood evidence; failed to re-direct after the cross-examination of the defendant permitting the jury to have the impression of "bad blood" between the defendant and the victim; and failed to introduce evidence of the defendant's alleged eye injury.
The State argues that the defendant had the right to proceed pro se or to be represented by counsel but that he did not have the right to a hybrid form of representation. The trial court found that the defendant was estopped from claiming ineffective assistance of counsel as he represented himself at trial and even if he had not proceeded pro se he failed to demonstrate that he received ineffective assistance of counsel.
The Sixth and Fourteenth Amendments guarantee that a criminal defendant has the constitutional right to represent himself. Faretta v. California
(1975), 422 U.S. 806 at syllabus. A defendant may proceed pro se when he voluntarily and intelligently elects to do so. Id. The Ohio Supreme Court also recognized that a defendant has a right to appear pro se or to be represented by counsel. State v. Thompson (1987), 33 Ohio St.3d 1, 6-7. However, the law does not provide for the right of the defendant to be represented by both himself and licensed counsel. The defendant "has no right to a `hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as his own counsel." State v.Keenan (1998), 81 Ohio St.3d 133, 138.
The trial court may permit the defendant to represent himself and also permit defendant to enjoy the additional assistance of standby counsel.McKaskle v. Wiggins (1984), 465 U.S. 168, 170-171.
In Keenan, the Court stated:
 By permitting Keenan to act as "co-counsel" for the purpose of examining witnesses, the trial judge gave Keenan all that he asked for (and more, incidentally, than he had any right to demand).
Keenan, at 138.
In the instant case, the defendant was afforded exactly what he requested. The record reveals that the defendant desired to represent himself pro se and to also be permitted to have his retained counsel participate in the trial as he orchestrated.
The trial court stated in its Findings of Fact as follows:
 Prior to the commencement of trial, Petitioner indicated to the court that he intended to proceed pro se with the assistance of his retained counsel, Michael Peterson and Frank Gasper. The court made an inquiry as to Petitioner's decision to proceed pro se. During the court's inquiry, Petitioner informed the court that he is a former prosecutor and had previously worked on criminal cases. The Petitioner stated that he was competent to represent himself, that he understood the maximum punishment he faced if convicted, that there were substantial changes in the law since he had last practiced criminal law, and that his conduct would be held to the same level of practice as any other attorney. Following the court's warnings, Petitioner stated that he wished to proceed pro se with the assistance of his retained counsel.
 As a result of its inquiry into Petitioner's decision, the court was able to determine that Petitioner was aware of the risks of proceeding pro se and knowingly and intelligently decided to represent himself at trial. Accordingly, the court granted Petitioner's motion to proceed pro se.
(pp. 1-2.)
Based on McKaskle, the court found in its Conclusions of Law that,
 [A]lthough the defendant is proceeding with the assistance of counsel, he is legally considered to be proceeding pro se when several factors are present, including that he is allowed to control the organization and content of his defense, make motions, argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury.
(pp. 11-12.)
The trial court found that the defendant served as his own chief trial counsel and that he was ultimately responsible for his own defense. We agree.
The defendant's pro se appellate brief reveals the following:
 The discussion concerning Mr. Socha's representation occurs before a jury is selected. (Tr. 6-9). During the course of this discussion, Mr. Socha states, "Your Honor, I want to participate, not try the entire trial." (Tr. 6-9). The court responds "I understand that." (Tr. 6-7). The court also states, "If you begin the examination of a witness, you will conclude the examination of that witness. There is not going to be any hands-off here." (Tr. 8). Referring to Mr. Socha, the court informs the prospective jurors, "He is represented by counsels, Mr. Frank Gasper and Mr. Michael Peterson." (Tr. 20). Mr. Socha chose not to attend sidebar conferences, and was told by the court that in the case of an extended conference, the jury would be removed and he could attend. (Tr. 23).
(p. 3-4).
As the defendant was a licensed attorney, he was particularly aware of the dangers and consequences of exercising his right to represent himself at trial.
In Faretta v. California, supra, the Court stated as follows:
 The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." Illinois v. Allen, 397 U.S. 337, 350-351 * * *.
Faretta, at 834.
The defendant knowingly and intelligently chose to proceed prose and was further granted the assistance of his retained counsel under his orchestration. We find that the trial court did not err when it decided that defendant proceeded pro se. The defendant's first assignment of error is overruled.
The defendant's second pro se assignment of error is as follows:
 PETITIONER'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT TRIAL IN VIOLATION OF HIS 6TH AND 14TH
AMENDMENT RIGHTS BY UNREASONABLY AND PREJUDICIALLY FAILING TO PRESENT DEFENSE EVIDENCE AVAILABLE TO HIM.
The Ohio Supreme Court held in State v. Jackson (1980),64 Ohio St.2d 107; 413 N.E.2d 819 at syllabus, "[i]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." See State v. Calhoun (1999), 86 Ohio St.3d 279; 283,714 N.E.2d 905, 910.
In Calhoun, the Ohio Supreme Court followed the test set forth by the United States Supreme Court for evaluating the allegation of ineffective assistance of counsel.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.
 In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71, 74 Ohio Op. 2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determinationas to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 Ohio Op. 3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.
Calhoun, supra, at 289.
 Ineffective-assistance claims are evaluated in a two-step process. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington
(1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. Second, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068, 80 L. Ed.2d at 698.
State v. Keenan at 152.
It is the defendant's burden to prove the ineffectiveness of his counsel as in Ohio properly licensed attorneys are presumed to be competent. State v. Jackson, supra, at 111; See State v. Calhoun, supra,
at 289. "In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner." State v. Girts (Nov. 22, 2000), Cuyahoga App. No. 77386, unreported at 12-13, citing, State v.Drake (Mar. 30, 2000), Cuyahoga App. No. 76072, unreported at 7-10; Statev. Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299, 209 N.E.2d 164.
In applying the two-step process, we find that the defendant has failed to establish that the assistance of his retained counsel fell below an objective standard of reasonableness and there is a reasonable probability that, but for his retained counsels' unprofessional errors, the result of the proceeding would have been different. The defendant's brief is replete with accusations and allegations of the failure of his retained counsel to test for blood and DNA evidence. However, the broad assertions are based on the transcript and evidentiary matters which have not been provided to this court.
 When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.
Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199,400 N.E.2d 384; see Vild v. Vild (Mar. 23, 2000), Cuyahoga App. No. 757330, unreported at 5. The defendant has failed to show prejudicial factors which would have changed the outcome of the jury's finding, beyond a reasonable doubt, that he was guilty of murder.
The affidavits of defendant's retained counsel which are attached to his appellate brief contradict his argument that he sustained an eye injury and that his retained counsel failed to test for blood and fingerprints. Both affidavits state as follows:
 Affiant attests that he was aware that the Cuyahoga County Coroner's Office inspected and performed thorough tests for blood and fingerprints on the deceased's automobile and keys.
 Affiant asserts that in furtherance of Mr. Socha's self-defense claims, he had tests performed on drinking glasses in Mr. Socha's house.
 Affiant attests that at no time prior to or during the course of the trial did Mr. Socha indicate that he had any vision problems as a result of his encounter with the deceased. Mr. Socha did not indicate that his eye was injured until after his conviction.
(Appellant's Brief, Exhibit B).
The defendant argues that the retained counsels' statements that the victim's automobile and keys were tested are false statements under oath. However, "[a]n affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false." Calhoun, supra, at 284.
The defendant also argues that his blood was present on some of the evidentiary items and that he was unable to have an eye exam due to his incarceration. The defendant contends that during the altercation he struck his head on concrete causing an eye injury and that evidence of this injury would have supported his claim of self-defense at trial. The affidavits of his retained counsel clearly state that the defendant did not complain of an eye injury until after his conviction. It was the defendant's obligation to inform his retained counsel of any alleged injury he sustained in the altercation and to present this evidence at trial.
Regarding testing of the victim's automobile and keys, the trial court found that it was within the trial strategy to decide whether to perform repetitive testing on the evidence and that the retained counsel complied with their duty to investigate evidence. The trial court further found that, as his own attorney, the defendant could have ordered additional testing himself.
Additionally, the defendant argues that his retained counsel failed to competently prepare a defense, but does not provide this court with more than that bald assertion. The trial court permitted the defendant to organize his own defense and trial strategy when it granted his motion to proceed pro se. "When an individual decides to proceed pro se he is bound by the same rules and procedures as litigants who retain counsel and must accept the results of their own mistakes and errors." Mackey v. SteveBarry Ford, Inc. (May 30, 1991), Cuyahoga App. No. 58681, unreported at 9. See Myers v. First National Bank (1981), 3 Ohio App.3d 209.
The defendant failed to meet his burden of submitting evidentiary documents which contain sufficient operative facts to demonstrate the lack of competent counsel and that his defense was prejudiced by his counsels' ineffectiveness. Jackson, 64 Ohio St.2d at 107. A review of the evidentiary documents submitted to this court do not show or tend to prove ineffective assistance of counsel or that the defendant was prejudiced by counsel. Accordingly, the defendant's second assignment of error is without merit and is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. MCMONAGLE, A.J., AND ANNE L. KILBANE, J., CONCUR.