[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15217
Non-Argument Calendar

_____

D. C. Docket No. 05-00286-CR-BBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL A. DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 16, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Michael A. Diaz appeals his seventeen-month sentence imposed upon

revocation of his supervised release. On appeal, Diaz argues that the district court erred in denying his request to proceed pro se at the supervised release revocation hearing. After review, we affirm.

## I. BACKGROUND

In order to evaluate the legal issues, we first detail the colloquy between Diaz and the district court during his two revocation hearings.

**A.     July 2006 Revocation Hearing**

In May 2000, Diaz was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(2), in the Eastern District of Louisiana and sentenced to fifteen months' imprisonment and three years' supervised release. In December 2001, Diaz's supervised release was revoked and a new sentence of seven months' imprisonment and twenty-six months' supervised release was imposed. On May 31, 2002, Diaz began serving his second supervised release term. In November 2003, a warrant was issued for Diaz's arrest for new violations of his supervised release. In June 2005, jurisdiction over Diaz's supervised release was transferred to the Northern District of Georgia.

In a March 2006 bench trial, a district court judge in Georgia convicted Diaz of two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), two counts of using and carrying a firearm during a crime of violence, in violation

2

of 18 U.S.C. § 924(c)(1)(A), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The same district court judge who presided over Diaz's supervised release hearings presided over Diaz's March 2006 bench trial.

In July 2006, Diaz's probation officer filed a petition to revoke Diaz's supervised release because Diaz had committed the following seven violations of the conditions of his supervised release: (1) failing to submit monthly reports from July to October 2003; (2) failing to report a change in his residence in June 2003; (3) failing to report a June 2003 arrest for possession of marijuana, resisting an officer, and battery on a police officer; (4) leaving a drug/aftercare program in June 2003; (5) leaving a mental health treatment program in June 2003; (6) failing to complete an orientation and life skills program; and (7) committing another federal crime, as evidenced by his March 2006 convictions for armed bank robbery, use of a firearm during a crime of violence, and possession of a firearm by a convicted felon (collectively "the armed bank robbery convictions"). Diaz was arrested, and the court appointed Natasha Perdew Silas, a federal public defender, as Diaz's counsel. Silas has represented Diaz both in the district court and now on appeal.

In July 2006, the district court held a revocation hearing with Diaz and his counsel present. Diaz stated his true name was "D'Ineiehaimaye" and refused to

3

acknowledge that he was Michael Diaz. The district court asked Diaz if he remembered serving time in Louisiana. Diaz responded, "I'm not here to dispute the facts of the case or argue the allegations. The record speaks for itself."

Diaz submitted three pro se motions and explained that he wanted the court to "dismiss all the binds alleged against the D'Ine and loose the D'Ine from this captivity, this illegal captivity this day." The district court denied Diaz's request to release him.

The government read the seven allegations in the revocation petition. The district court asked Diaz's counsel if she had reviewed the allegations with Diaz. Diaz's counsel said she had presented them to Diaz and there had been a preliminary hearing on them. The district court asked Diaz if he understood the allegations against him, and Diaz said he was familiar with the petition. The district court again asked Diaz to explain the written motions he had filed. Diaz stated, "I'm moving that the court loose D'Ine from his illegal captivity." The district court again denied Diaz's request.

The district court asked Diaz's counsel if she had anything to say. Diaz's counsel asked the court to dismiss the revocation petition because Diaz already was serving a 584-month sentence on the armed bank robbery convictions, and Diaz did not object to counsel's request. The district court stated that it would not

4

dismiss the petition and that it would continue the revocation hearing pending Diaz's appeal of those convictions. The government and defense counsel indicated there was no objection. Diaz made another motion "to loose D'Ine from this illegal captivity." The district court denied his motion.

**B.      October 2007 Revocation Hearing**

In October 2007, Diaz's counsel filed a motion requesting that the district court resume Diaz's revocation hearing instead of waiting until the appeal of his armed bank robbery convictions was decided. On appeal, Diaz's counsel said she made this request because Diaz was subject to twenty-three-hour lockdown in the current detention facility and could not be designated by the Bureau of Prisons to be moved to another facility until the district court ruled on the revocation petition.

In October 2007, the district court resumed Diaz's revocation hearing. The district court addressed Diaz, but Diaz said his name was Za-El Iye. Diaz spelled his new name for the court reporter and stated, "Here this day as defendant of faith to make entry of discovery, make declaration of alienation from assumed citizenry of the United States of America, or any of our subsister states, my proclamation as a foreign bureaucratic diplomatic of a foreign nation. . . . And a sacred forfeit unto God."

In explaining the purpose of the hearing, the district court stated that Diaz

5

had now been tried and convicted. Diaz responded, "That's not the person I am now is not who you recognize."

Diaz's counsel stated, "[I]t is my understanding this morning that Mr. Diaz, he has requested to represent himself, and I wanted to make that known to the Court, because I have not been interjecting any sort of argument." The district court stated that it wanted to explain to Diaz that the purpose of the hearing was to sentence him on his violation of supervised release from the Louisiana conviction and why it was important to proceed. The district court asked Diaz if he remembered the previous supervised release hearing. Diaz responded, "As I said, I am sacred, forfeited to God, St. DA I'z Naga, I & IKARA, serving up a higher elect. Okay. That's a congregation created by the heavenly manna by God." Diaz further stated, "I am an autonomous religious faith, living in a liberty establishment."

The district court explained that the petition to revoke supervised release needed to be resolved or Diaz would remain in pretrial release. The district court stated that the guidelines range for the supervised release violation was seventeen months' imprisonment, which the court observed was "very small" in comparison to the 584-month sentence Diaz received on the armed bank robbery convictions. The district court stated that regardless of whether Diaz represented himself or

6

allowed Silas to represent him, it wanted to proceed so Diaz could be transferred from the pretrial facility to a regular prison with better conditions.

The government noted Diaz's appeal of his armed bank robbery convictions still was pending. The government agreed that Diaz would have to remain in a pretrial facility until the supervised release violations were resolved because the government would not dismiss the petition.

The district court acknowledged that Diaz did not recognize the court's authority over him, but stated that it was in Diaz's best interest to be sentenced and moved to a regular facility. The district court stated it would like to proceed that day with Silas representing Diaz.

Diaz stated, "According to my understanding, this hearing is to determine whether I'm to be–I, the person now, is to be sentenced or not to be sentenced." Diaz continued with the following:

> I hereby invoke the supreme power of this imperial majesty by a divine right of kings and guardians, and intrinsic inalienable and natural rights, you know, of which no government or creature might infringe upon, and impede, or interfere, or prohibit the free exercise of my unalienable rights to worship, adhere, express, engage or observe any form, quote-unquote, religious opinion, or refrain from any form of, quote-unquote, religious opinion, public or private. And as is upheld in the U.S. Constitution, upheld by the First Amendment, you know, as well.
> So, I conclude then, professing such a sacred state to be civil death and a civil death again, and therefore, any consecutive jurisdiction or enforcement of this foreign ruling, and with that said,

7

the only remaining question is to the lady of the Court sitting in the seat of judgment, do you have any objections to these said eternal divine natural ecclesiastical, quote-unquote, religious humane intrinsic, inalienable, inherent rights of liberties, or either objection to the United States Constitution of law, abiding by the First and Ninth Amendment.

Diaz then asked if the court and government objected to "these said rights and liberties." The district court responded by asking if it could proceed to sentence him. Diaz said, "I'm asking you, anybody in this court, have any objection to my divine, eternal, natural, ecclesastical, quote-unquote, religious, humane, intrinsic, inalienable, inherent rights and liberties?" The district court commented that it did not think it could go forward. The district court again attempted to explain to Diaz that it either could sentence Diaz that day and have him transferred to another facility or send him back to the pretrial facility. Diaz responded, "Being there is no one that objects to these rights and liberties of mine, I demand I be at large." The district court denied Diaz's request.

The district court asked Diaz's counsel if it was her understanding that Diaz wanted to represent himself. Diaz's counsel said that was her understanding, but the court had not ruled on Diaz's request. The district court confirmed that it had not ruled on the request. Diaz's counsel also requested the court to impose a concurrent sentence on any revocation because Diaz already had received a large sentence and further incarceration would not accomplish anything. In response to

8

his counsel's request, Diaz said, "I object, ma'am. I don't recognize no charges bearing or binding upon Iye, the person I am now."

The district court observed that it thought Diaz did a good job representing himself at trial. Diaz responded, "Are you referring to Iye or the personality of the defendant. I am Za-El Iye." The district court stated that Diaz generally understood when it was in his interest to go forward and when it was not and that what he was doing that day was not in his interest. The district court again asked Diaz if it could proceed to sentence him so he could be moved from the pretrial detention facility. Diaz responded as follows:

> Ma'am, you don't have no jurisdiction over Iye, the person I am now. Okay. And I really think you are hedging on this up to here, because, you know, the issue is that, you know, I am not the defendant. I haven't been proven guilty of nothing. The person I am now is Za-El Iye, seen in the eyes of God, Da I Iez Match. And the evidence shows that, I submit, the government don't have the right to infringe upon no form of religious opinion or practice by the First Amendment.

The district court stated that the government has "a right to impose upon somebody that robs a bank." Diaz responded, "I'm not here to dispute no legal fiction or legalese. I haven't discussed it. I'm not here to dispute it or argue it."

The district court asked the government for its sentence recommendation, and the government recommended a seventeen-month sentence to run concurrently with his current sentences on the armed bank robbery convictions. The district

9

court asked Diaz if he understood that the government was not asking for any additional sentence. Diaz responded, "I don't understand what you are insinuating."

The district court stated, "Tell you what I'm going to do. I'm going to proceed with Ms. Silas as your counsel. I'm going to find a violation of your supervised release." Diaz objected and said, "I already represented myself," and "I already made the record in my claim that you don't have the right to impose upon my religious practice." Diaz stated to the court, "You don't have a right to impose upon a religious establishment. I have unwritten rights protected and defended by the Ninth Amendment of the United States Constitution. So, I mean, you know, you are breaching your own constitutional law."

The district court stated that it understood Diaz's position, but nevertheless found that Diaz's "bank robbery" conviction in her court was a grade A violation of his supervised release in Louisiana. Diaz said, "I'm not here to argue or dispute no legal fiction or legalese, much less hearsay, which you speak hearsay." The district court sentenced Diaz to seventeen months' imprisonment. Diaz asked, "Who is you? Who are you referring to?" and reiterated "I am Za-El Eye." The district court explained that the sentence it was imposing would run concurrently with his armed bank robbery sentences. Diaz stated, "I'm not binded by that."

10

The district court restated its finding that Diaz had committed a grade A violation and its sentence of seventeen months' imprisonment to run concurrently with Diaz's armed bank robbery sentences. The district court allowed Diaz to object to the court's findings, guidelines calculations, sentence, and the manner in which the sentence was pronounced. The following exchange occurred between Diaz, Diaz's counsel, and the district court:

| | |
|---|---|
| Diaz: | Are you referring to Za-El Iye? |
| Court: | I'm referring to you. |
| Diaz: | The defender of the faith. |
| Court: | I'm referring to you. It's your time to object. |
| Diaz: | The person now? |
| Diaz's counsel: | Judge, for the record. |
| Diaz: | Are you referring to Iye, the person now? |
| Court: | I'm referring to you. |
| Diaz's counsel: | Defendant objects on his previously stated grounds. |
| Court: | All right. Thank you. |
| Diaz: | The defender of the faith and the person now. Is that who you are referring to? |
| Court: | I'm referring to you. |
| Diaz: | Who is you? |
| Court: | The person sitting right in that chair. |
| Diaz: | I mean, the person sitting in this chair is innocent and outside the United States jurisdiction as a religious establishment. |

The district court informed Diaz of his right to appeal. Diaz objected that his name was not Diaz. The district court asked Diaz's counsel to file an appeal on his behalf, and Silas said she would. Diaz said, "I object, I object. Again, she

don't have the right to file anything on the Iye, the person now, on my behalf. I refuse to be misconstrued as being a surety to this Mr. Diaz who you are referring to. There is no Mr. Diaz present here." Diaz's counsel stated that it might be more appropriate for the clerk to file a notice of appeal for him. Diaz objected, and the district court said it needed to hear from his counsel. Diaz's counsel said it was not clear that Diaz wanted her to represent him going forward. Diaz said, "It is clear. I'm representing myself."

After Diaz's counsel further discussed the options for filing an appeal for Diaz, Diaz stated, "My question is what evidence has been presented to impose sentence on Iye, the person now, the defender of the faith. I am Za-El Iye. What evidence is there? There is none." The district court explained that he had a conviction for bank robbery while on supervised release. Diaz responded, "Concerning this matter of my religious practice, as a religious establishment, what evidence is there presented now? I'm not arguing or disputing no legalese or any past time. I'm speaking of now, at this hearing today, the 30th of October. What evidence? There is none, right?" After the district court repeated its previous statement, Diaz stated, "This is not a bank robbery here. I said I'm not here to argue or dispute no legalese or legal fiction."

Diaz filed this appeal.

12

## II. DISCUSSION

On appeal, Diaz argues that the district court violated his Sixth Amendment right to waive his right to counsel and represent himself at the supervised release revocation hearing.[1] See Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975) (stating that the Sixth Amendment implies a criminal defendant's right to represent himself).

As an initial matter, we acknowledge the government's argument that Diaz waived his right to represent himself by his obstructionist conduct at the supervised release hearing. We need not resolve that issue because the record in this particular case overwhelmingly shows (1) Diaz in fact repeatedly was allowed to address the court freely on his own behalf and to make his own pro se defenses to the district court and (2) Diaz's counsel did not interfere or conflict with anything Diaz tried to do. See McKaskle v. Wiggins, 465 U.S. 168, 180, 104 S. Ct. 944, 952 (1984).

Importantly, this supervised release revocation hearing was before the court, not a jury, and the presence of Diaz's appointed counsel did not interfere in any way with Diaz's right to represent himself. Diaz was allowed to file three pro se written motions and make several oral motions requesting his release and dismissal

---

[1]We review de novo a defendant's claim that his Sixth Amendment rights were violated. See United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002).

13

of the petition to revoke supervised release.  The district court ruled on all of these motions.  Neither Diaz nor his attorney disputed any of the allegations in the revocation petition.  The district court allowed Diaz to make repeated statements and objections both before and after sentencing, and, in particular, Diaz made his own objections that he was no longer Michael Diaz and that the district court had no authority over him.  Therefore, the district court, in essence, allowed Diaz to conduct his own defense, even though it stated that it was going to proceed with Diaz's appointed counsel representing him.

Furthermore, Diaz's appointed counsel did not interfere with Diaz's defense conduct.  Diaz's counsel stated she had not been "interjecting any sort of argument" on Diaz's behalf in light of his request to represent himself.  Diaz's counsel did argue that the district court should dismiss the petition to revoke supervised release because Diaz already was serving a significant sentence on the armed bank robbery convictions.  Diaz did not object to this argument by counsel.  Diaz's counsel requested, alternatively, that any sentence imposed by the district court be ordered to run concurrently with his armed bank robbery sentences.  Diaz objected, but only to the suggestion that there were charges against him (i.e., Za-El Iye, as opposed to Michael Diaz), not to counsel's recommendation that any imposed sentence be ordered to run concurrently.  Thus, there is no indication in

14

the record that Diaz's counsel interfered with the arguments or strategy Diaz pursued. In fact, after the district court determined near the end of the hearing that it would proceed with Diaz's appointed counsel representing him, Diaz indicated his surprise by saying, "I already represented myself." Diaz simply has shown no interference by his counsel with any of his pro se conduct. The district court navigated a delicate path here, effectively keeping counsel involved but also allowing Diaz to make his pro se motions, arguments, and objections.

Finally, we note Diaz has requested that this Court vacate his seventeen-month sentence for violating the conditions of his supervised release and remand to the district court in light of this Court's August 22, 2008 decision vacating Diaz's armed bank robbery convictions. See United States v. Diaz, __ F.3d __, No. 06-13782, 2008 WL 3876478 (11th Cir. Aug. 22, 2008). Diaz argues that his armed bank robbery convictions were the district court's only bases for revoking his supervised release. However, the petition to revoke Diaz's supervised release alleged seven violations, including Diaz's armed bank robbery convictions, and Diaz did not dispute any of these allegations. More importantly, Diaz's argument ignores the fact that the district court judge who presided over Diaz's supervised release hearing was the same judge who presided over the bench trial and found Diaz guilty of the armed bank robberies. This Court vacated Diaz's armed bank

15

robbery convictions on the sole ground that Diaz did not validly waive his right to a jury trial and not because of lack of evidence.  Id. at *7 & n.1.  The district court judge herself heard all the evidence as to Diaz's armed bank robbery charges and found him guilty of the armed bank robberies, which obviously violated the condition of his supervised release to not commit another federal crime.  Thus, Diaz has not carried his burden to show that the district court, after having heard the bank robbery evidence, later erred in revoking his supervised release.

Based on the reasons above, we affirm Diaz's seventeen-month sentence imposed for violations of his supervised release.

**AFFIRMED.**