MARTIN, Circuit Judge, concurring:
 

 I concur in the opinion of the majority. I write separately in appreciation of the state trial judge's appointment of special counsel for Mr. Barnes. This appointment by the state trial judge allowed development and presentation of mitigation evidence, even here, where Mr. Barnes refused to participate in that process.
 

 The courts are charged with ensuring that death sentences are imposed only in a manner consistent with constitutional requirements. "[C]onsideration of the character and record of the individual offender and the circumstances of the particular offense [is] a constitutionally indispensable part of the process of inflicting the penalty of death."
 
 Woodson v. North Carolina
 
 ,
 
 428 U.S. 280
 
 , 304,
 
 96 S.Ct. 2978
 
 , 2991,
 
 49 L.Ed.2d 944
 
 (1976) (plurality opinion). Without knowledge of a person's individual history and characteristics, "the fundamental respect for humanity underlying the Eighth Amendment" cannot be given.
 

 Id.
 

 After the State presented its case for aggravation, Mr. Barnes "refused to present any evidence of mitigation and announced that he would rely only on the fact that he came forward and took responsibility for the murder."
 
 Barnes v. State
 
 ,
 
 29 So.3d 1010
 
 , 1014 (Fla. 2010). His refusal meant the sentencer-here, the trial judge-would not be able to fully consider Mr. Barnes's character and background. So if the judge had not intervened to develop the record, the "process of inflicting the penalty of death" would have proceeded without one of its "constitutionally indispensable" components.
 
 See
 

 Woodson
 
 ,
 
 428 U.S. at 304
 
 ,
 
 96 S.Ct. at
 
 2991 ;
 
 see also
 

 Eddings v. Oklahoma
 
 ,
 
 455 U.S. 104
 
 , 112,
 
 102 S.Ct. 869
 
 , 875,
 
 71 L.Ed.2d 1
 
 (1982).
 

 This trial judge did not let that happen. Over Mr. Barnes's objection, the judge ordered a pre-sentence investigation ("PSI"), a mental health evaluation, and school records, also appointing special counsel to investigate and present mitigation.
 

 Barnes
 
 ,
 
 29 So.3d at 1014
 
 .
 
 [1]
 
 With the help of an investigator, special counsel then prepared and presented a mitigation report to the court. That report revealed that Mr. Barnes's mother was an alcoholic who showed her children no affection; that Mr. Barnes's father was cold and physically abusive; and that Mr. Barnes was likely sexually abused as a child. And special counsel presented the testimony of Dr. Riebsame, a forensic psychologist, who indicated that Mr. Barnes was suffering from an extreme mental disturbance while murdering and sexually assaulting Ms. Miller. Upon reviewing Mr. Barnes's guilty plea and the record created through Barnes's own representation of himself, the trial judge found three non-statutory mitigators. But with the help of the PSI, the mitigation report, and Dr. Riebsame's testimony, that judge then found six additional mitigators. These included one statutory mitigator-that Mr. Barnes was suffering from an extreme emotional disturbance at the time of the offense-and five non-statutory mitigators.
 
 [2]
 
 Clearly, the information provided by special counsel and the PSI allowed the court to more "accurately gauge [Mr. Barnes's] moral culpability."
 
 See
 

 Porter v. McCollum
 
 ,
 
 558 U.S. 30
 
 , 41,
 
 130 S.Ct. 447
 
 , 454,
 
 175 L.Ed.2d 398
 
 (2009).
 

 Our jurisprudence guarantees Mr. Barnes, and others like him, the right to represent themselves, even when facing a sentence of death. This guarantee can, of course, be in tension with the obligation of courts to individually assess every defendant facing a death sentence.
 
 See
 

 McKaskle v. Wiggins
 
 ,
 
 465 U.S. 168
 
 , 177-78,
 
 104 S.Ct. 944
 
 , 950-51,
 
 79 L.Ed.2d 122
 
 (1984) (explaining that the "core" of the right to self-representation is a
 
 pro se
 
 defendant's "actual control over the case he chooses to present," which requires ensuring that standby counsel does not "make or substantially interfere with any significant tactical decisions"). This trial judge did a commendable job of balancing both commands. And, as the majority has explained, the Florida Supreme Court's validation of that judge's actions in this regard was neither contrary to nor an unreasonable application of clearly established federal law.
 

 "[T]o ensure reliability, fairness, and uniformity in the imposition of the death penalty" when a defendant refuses to present mitigation evidence, Florida trial judges must order a comprehensive PSI and require the State "to place in the record all evidence in its possession of a mitigating nature."
 
 Muhammad v. State
 
 ,
 
 782 So.2d 343
 
 , 363-65 (Fla. 2001). When these records "alert the trial [judge] to the probability of significant mitigation," Florida encourages the trial judge to call its own mitigation witnesses or appoint special counsel for that purpose.
 

 Id.
 

 at 364
 
 . In my view, the Eighth and Fourteenth Amendments surely encourage similar procedures and may well require them.
 

 The judge also found a non-statutory mitigator that duplicated the extreme emotional disturbance statutory mitigator.