

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PETER MANUEL CANDELARIA, | § | No. 08-20-00007-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 118th District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Howard County, Texas |
| | § | |
| Appellee. | § | (TC#15,554) |
| | § | |

## O P I N I O N

Appellant, Peter Manuel Candelaria, appeals his conviction of evading arrest with a motor vehicle. TEX.PENAL CODE ANN. § 38.04(b)(2)(A).[1] In a single issue, Appellant seeks reversal of his conviction, asserting defense counsel impermissibly conceded guilt at trial. We affirm.

### BACKGROUND

### *Factual Background*

---

[1] Appellant was charged with seven offenses arising out of a single criminal action. At trial, the State filed a motion to join all seven offenses, which was granted. Appellant challenges his conviction in seven separate appeals—08-20-00007-CR, 08-20-00008-CR, 08-20-00009-CR, 08-20-00010-CR, 08-20-00011-CR, 08-20-00012-CR, and 08-20-00013-CR. Carrying forward Appellant's individual structure, we address each appeal separately. This particular appeal solely addresses appellate cause number 08-20-00007-CR, which involves the offense of evading arrest with a motor vehicle. Additionally, this case was transferred from Eastland Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. See TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Eastland Court of Appeals to the extent they might conflict with our own. See TEX.R.APP.P. 41.3.

The Big Spring Police Department had actively been attempting to locate and arrest Appellant for outstanding warrants. On the morning of December 28, 2018, Sergeant Steve Henry and Investigator Dustin Thomas conducted surveillance at a known residence of Appellant. Sergeant Henry and Investigator Thomas sat and surveilled from their respective unit vehicles—unmarked trucks equipped with red and blue lights, sirens, and radio. Based on information the officers had, they believed Appellant drove a burgundy or red Buick, and knew the license plate number. After not detecting activity, the officers took their lunch break and left the location. After lunch, Investigator Thomas returned to the location and notified Sergeant Henry that he detected movement; Appellant was "getting in and out of the house and to the vehicle." Sergeant Henry was in communication with Investigator Thomas while en route to the surveilled address when he detected the burgundy Buick and positively identified the driver as Appellant. Sergeant Henry then pulled up behind Appellant, activated the emergency lights of his undercover unit and notified dispatch of the pursuit. During his testimony, Sergeant Henry stated he observed Appellant look at him through the rearview mirror as soon as he began to follow him. Soon after, Appellant turned right, and at this point, Sergeant Henry turned on his unit sirens; Appellant accelerated. Appellant continued to accelerate, ran at least two stop signs, and at one point, drove in the wrong direction on a one-way street. The vehicle then stopped, and two individuals exited the vehicle—Appellant and a female. Appellant ran away and a foot pursuit ensued.

Sergeant Henry testified the vehicle pursuit—from the time he activated his unit lights, to the time Appellant stopped and exited the vehicle—lasted about two and a quarter mile, with Appellant reaching a speed of 80 mph. The foot pursuit ended when Appellant attempted to hide in a dumpster, and ultimately opened fire on several officers once he was found.

2

### *Procedural Background*

Appellant was charged with evading arrest with a motor vehicle, enhanced to a third-degree felony by two priors. The jury found Appellant guilty and sentenced him to the Institutional Division of the Texas Department of Criminal Justice for a term of twenty-five years. This appeal followed.

## DISCUSSION

In a single issue, Appellant claims defense counsel impermissibly conceded guilt at trial and is entitled to reversal of his conviction. We disagree.

### *Standard of Review and Applicable Law*

The Sixth Amendment guarantees a criminal defendant assistance of counsel for his defense, and when a defendant expressly asserts that the objective of his defense is to maintain innocence, his lawyer must abide by that objective and may not override it by conceding guilt. *McCoy v. Louisiana*, __ U.S. __, 138 S.Ct. 1500, 1508-09 (2018). The Supreme Court has held the Sixth Amendment further guarantees a defendant "the right to insist that counsel refrain from admitting guilt, even when counsel's experience-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *Turner v. State*, 570 S.W.3d 250, 274 (Tex.Crim.App. 2018). Appellant relies solely on *Turner* and *McCoy* as the basis for reversal.[2]

The "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to

---

[2] The State counters this appeal by conducting a Sixth Amendment effective assistance of counsel analysis. However, the crux of Appellant's argument is a *McCoy* violation, and for reasons articulated by the Supreme Court, we need not address the State's Sixth Amendment effective assistance of counsel analysis. *See McCoy*, 138 S.Ct. at 1510-11 ("Because a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence, *Strickland v. Washington*, 466 U.S. 668, . . . (1984), or *United States v. Cronic*, 466 U.S. 648, . . . (1984) to McCoy's claim.").

harmless-error review." *McCoy*, 138 S.Ct. at 1511; *see, e.g., McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984)("The right is either respected or denied; its deprivation cannot be harmless."). The Supreme Court has explicitly held a counsel's admission of a client's guilt over the client's express objection is error structural in kind. *McCoy*, 138 S.Ct. at 1511 (explaining, "[s]uch an admission blocks the defendant's right to make the fundamental choices about his own defense. And the effects of the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt.").

Both defendants in *McCoy* and *Turner* were on trial for capital murder. *Turner*, 570 S.W.3d at 275. In both cases, the defense counsel's strategy was to concede guilt, but argue the defendant was guilty of a lesser offense to eliminate the death penalty. *Id*. Both defendants pled not guilty, disagreed with their respective counsel's strategy, and testified contrary to it. *Id*. Both defense counsels moved forward with their strategy, irrespective of their client's will to maintain innocence; this is known as a *McCoy* claim. *Id*. The Court held a "defendant makes a *McCoy* complaint with sufficient clarity when he presents 'express statements of [his] will to maintain innocence.'" *Id*. at 276.

McCoy "opposed [his counsel's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court[,]" which the Court found amounted to an express statement of his will to maintain innocence. *McCoy*, 138 S.Ct. at 1504. The Court held "[c]ounsel's admission of a client's guilt over the client's express objection . . ." accorded McCoy "a new trial without any need first to show prejudice." *Id*. In *Turner*, the Court found there was no question Turner expressly maintained his innocence and it was clear his counsel

4

knowingly went against his wishes. 570 S.W.3d at 276-77. The Court held *McCoy* was violated and ordered reversal. *Id*. at 277.

### *Analysis*

Appellant asserts a *McCoy* claim and requests we reverse his conviction, asserting that at trial, he "unequivocally pleaded 'not guilty' to the instant evading charge." According to Appellant, defense counsel conceded guilt in his closing argument against his wishes:

> [Appellant] admitted he's guilty. He said it. You know, it's for you to decide, not me, but I think he was pretty blunt on what he does and all that type deal. You know, 'Evaded arrest, sure I did,' type deal, you know.

Although it is true Appellant pled not guilty, we find his will to maintain innocence was neither express nor unequivocal. On direct examination, Appellant and defense counsel had the following exchange:

> Q. But at some point you knew that it was the police; is that fair to say or…
>
> A. Yes, sir, I did.
>
> .              .              .
>
> Q. So, in all fairness, you intentionally fled from the officer. You knew it was a police officer, and you fled from him in a vehicle. You used the vehicle. We're not in any way contesting that issue; is that fair to say?
>
> A. No sir. I fled.

On cross examination, Appellant confirmed his guilt to the prosecutor:

> Q. You knew when that black pickup truck turned behind you and turned his lights on and the siren, you knew it was a cop?
>
> A. Yes, sir, I knew.
>
> Q. And you knew you had two outstanding warrants at the time, didn't you?
>
> A. Yes, sir.

5

Q. So you knew they were going to arrest you?

A. Yes, I knew.

Q. So that kind of gives you motivation to run right there, doesn't it?

A. Yes, sir.

.             .             .

Q. So all the drugs in the car and the gun, they all give you motivation, 'I've got to get away from this guy'; is that fair?

A. Yeah, that's fair.

Q. So by your own admission, you're really in the act of committing about three different felonies and you're evading and you have warrants; is that fair?

A. Yes sir.

*McCoy* is violated and reversal is required only upon a showing that a defendant has expressly stated his will to maintain innocence. *Turner*, 570 S.W.3d at 276. In the instant case, Appellant did not expressly state his will to maintain innocence; in fact, Appellant did the exact opposite and expressly stated his will to maintain *guilt*. As such, we cannot find *McCoy* was violated. Appellant is not entitled to reversal of his conviction of evading arrest with a motor vehicle. Appellant's sole issue is overruled.

## CONCLUSION

For these reasons, we affirm.

April 14, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)